UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TAMMY B.,

                Plaintiff,

v.

NANCY BERRYHILL
*Acting Commissioner of Social Security*,

                Defendant.
_____

8:18-CV-0130
(GTS)

APPEARANCES:                                          OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEASTERN N.Y.    CHRISTOPHER E. COOPER, ESQ.
  Counsel for Plaintiff
17 Hodskin Street
P.O. Box 648
Canton, New York 13617

SOCIAL SECURITY ADMINISTRATION              PADMA GHATAGE, ESQ.
OFFICE OF GENERAL COUNSEL–REGION II       Special Assistant U.S. Attorney
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, New York 10278

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

Currently before the Court, in this action filed by Tammy B. ("Plaintiff") against the Commissioner of Social Security ("Defendant") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are (1) Plaintiff's motion for judgment on the pleadings, and (2) Defendant's motion for judgment on the pleadings. (Dkt. Nos. 14, 16.) For the reasons set forth below, Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born in 1966, making her 44 years old at the alleged onset date and the application filing date, and 50 years old at the date of the ALJ's decision. Plaintiff reported obtaining her GED and attending three years of college with no degree. The vocational expert found that Plaintiff had past work as a commercial cleaner. In her application, Plaintiff alleged disability due to hip bursitis and hepatitis C; at the hearing, she also alleged difficulty breathing due to asthma and chronic obstructive pulmonary disease ("COPD"), anxiety, depression, posttraumatic stress disorder, restless leg syndrome, and gastrointestinal issues.

   B.   **Procedural History**

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on July 23, 2010, alleging disability beginning June 18, 2010. Plaintiff's applications were initially denied on October 18, 2010, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a hearing before ALJ Bruce S. Fein on November 10, 2011. On March 8, 2012, ALJ Fein issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 182-92.)[1] On July 16, 2013, the Appeals Council remanded that decision for further proceedings. (T. 197-99.) Plaintiff appeared at a subsequent hearing on December 20, 2013. On April 2, 2014, ALJ Fein again issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 205-18.) On September 16, 2014, the

---

[1] The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

Appeals Council denied Plaintiff's request for review, but subsequently vacated that denial on February 18, 2015, and remanded for further proceedings. (T. 228-31.) Plaintiff appeared at a third hearing on April 25, 2016, before ALJ Marie Greener. On July 6, 2016, ALJ Greener issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 18-31.) On December 4, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-3.)

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 18-31.) First, the ALJ found that Plaintiff was insured for benefits under Title II until December 31, 2014. (T. 20.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (*Id.*) Third, the ALJ found that Plaintiff's COPD, bilateral hip osteoarthritis, borderline intellectual functioning, depression, and anxiety are severe impairments, while her high blood pressure, gastroesophageal reflux disorder, hepatitis C, Barrett's esophagus, restless leg syndrome, sleep apnea, and degenerative changes of the knees and lumbar spine are not severe impairments. (T. 21.) Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 21-23.) Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint) and 3.02 (chronic respiratory disorders). (*Id.*) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform at a

> light level of exertion, as defined in 20 CFR 404.1567(b) and 416.967(b), in an indoor, climate-controlled environment, with no concentrated exposure to respiratory irritants. The claimant is limited to performing tasks that do not require working in tandem or in conjunction with others, and which predominantly involve working

>with objects rather than people. The claimant is also restricted to
>performing routine daily tasks and duties in the same workplace,
>which do not significantly change in pace or location on a daily basis

(T. 24.) Sixth, the ALJ found that Plaintiff is unable to perform her past work as a commercial cleaner. (T. 29.) Seventh, the ALJ found that Plaintiff remains able to perform a significant number of other jobs in the national economy including as a small products assembler, mail clerk, and marker. (T. 30.) The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefing on Their Motions

#### 1. Plaintiff's Motion for Judgment on the Pleadings

Generally, Plaintiff makes five arguments in support of her motion for judgment on the pleadings. (Dkt. No. 14, at 20-33 [Pl.'s Mem. of Law].) First, Plaintiff argues that the ALJ erred in weighing the medical opinions. (*Id.* at 20-27.) More specifically, Plaintiff argues that (a) the ALJ erred in affording great weight to the opinion of consultative examiner Dr. Noia because the ALJ failed to address the other evidence in the record in relation to Dr. Noia's opinion and because Dr. Noia's opinion is inconsistent with the other opinions, (b) the ALJ erred in affording lesser weight to the opinion of examining physician Dr. Oman based on the fact that Dr. Oman had only examined Plaintiff once because such rationale is inconsistent with the ALJ's reliance on Dr. Noia's opinion, and because the ALJ selectively relied on only portions of the record favorable to her determination rather than the record as a whole, (c) the ALJ erred in affording less weight to the opinion of examining physician Dr. Kimball for the same reasons as related to Dr. Oman's opinion as well as the fact that Dr. Kimball's opinion is consistent with a majority of the other opinion evidence and with his own observations, (d) the ALJ erred in affording lesser weight to the opinion of Nurse Practitioner Richards because the ALJ failed to note evidence

suggesting greater limitations or to acknowledge the frequency of her treatment relationship with Plaintiff, and because it was improper to discount this opinion based on the fact that Plaintiff had not alleged a mental impairment in her initial application, and (e) the ALJ erred in affording minimal weight to the opinion of therapist Herzog because even non-acceptable sources are entitled to weight, the ALJ improperly found the language in the form used for his opinion to be vague, and she improperly discounted the opinion for evaluating the merits of the potential of Plaintiff returning to work. (*Id.*) Plaintiff also argues that, as to the physical opinion evidence, the ALJ improperly formulated the RFC before affording weight to the opinion evidence that was consistent with that finding. (*Id.* at 27.)

Second, Plaintiff argues that the ALJ erred in analyzing whether Plaintiff meets or equals a Listing. (*Id.* at 27-29.) More specifically, Plaintiff argues that the ALJ would have found greater limitations using the psychiatric review technique (a component of the analysis of mental Listings) had she properly weighed the opinion evidence. (*Id.*)

Third, Plaintiff argues that the ALJ erred in formulating the RFC because it is inconsistent with the medical opinions in the record. (*Id.* at 30-31.)

Fourth, Plaintiff argues that the ALJ's credibility determination is unsupported by substantial evidence because it relies on selective citations to the record rather than the record as a whole, and because the ALJ failed to consider all the relevant factors including Plaintiff's work record, the precipitating and aggravating factors of her impairments and symptoms, and Plaintiff's extensive treatment record. (*Id.* at 31-32.)

Fifth, Plaintiff argues that the errors in the RFC determination are harmful and require remand because testimony from the vocational expert containing limitations from the rejected

opinions indicated that Plaintiff would be disabled if those limitations were accepted. (*Id.* at 32-33.)

## 2. Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes two arguments in support of her motion for judgment on the pleadings. (Dkt. No. 16, at 6-17 [Def.'s Mem. of Law].) First, Defendant argues the ALJ appropriately weighed the opinion evidence and that the RFC finding is supported by substantial evidence. (*Id.* at 6-14.) More specifically, Defendant argues that (a) the ALJ properly afforded Dr. Noia's opinion more weight than any other opinion because Dr. Noia's opinion was supported by his own observations and the rest of the medical evidence, (b) the ALJ properly weighed Dr. Kimball's opinion because the exam observations Plaintiff cites as consistent with Dr. Kimball's opinion do not actually correspond to the opined limitations, and (c) the ALJ was entitled to afford less weight to the opinions from the non-acceptable sources based on their status and the other reasons outlined in the decision, including the ALJ's assertion that therapist Herzog's opinion was vague because it did not specify the extent and frequency of the opined limitations. (*Id.* at 6-12.) Defendant also argues that (a) the fact that the ALJ noted that some sources had only examined Plaintiff once when weighing their opinions is not problematic because the ALJ provided multiple other reasons for discounting those opinions, (b) the ALJ did not cherry-pick favorable evidence and is not required to cite to or reconcile every piece of evidence in the record, (c) the ALJ was reasonable in interpreting the record as showing that Plaintiff's mental impairments were "stable," and (d) a single opinion from a consultative examiner can legally constitute substantial evidence to support the ALJ's decision. (*Id.* at 7-14.)

Second, Defendant argues that the credibility determination is supported by substantial evidence because the ALJ provided ample reasons for that determination, including the medical evidence, the fact that Plaintiff's treatment consisted of only medication and therapy, and Plaintiff's own reports of her activities of daily living. (*Id.* at 14-15.) Defendant further argues that the ALJ did not rely solely on selective portions of the record, and that ALJ is not required to explicitly discuss a claimant's work history because that is merely one factor relevant to the analysis of credibility and is not determinative where there are other reasons to doubt a claimant's credibility (as there are here). (*Id.* at 15-17.)

### 3. Plaintiff's Reply Memorandum of Law

Generally, in reply, Plaintiff makes two arguments. (Dkt. No. 20, at 2-6 [Pl.'s Reply Mem. of Law].) First, Plaintiff argues that (a) Defendant mischaracterized Plaintiff's arguments in its motion for judgment on the pleadings, (b) Dr. Noia's opinion is not supported by the record as a whole, (c) the ALJ selectively cited to the record, (d) the internal inconsistency created by the ALJ's reliance on Dr. Noia's opinion while rejecting other opinions for being rendered by one-time examining physicians is relevant and important, (e) Defendant's arguments as to therapist Herzog's opinion are *post hoc* rationalizations that this Court may not consider, and (f) Defendant's argument that Plaintiff's cessation of her medication would have caused withdrawal symptoms that worsened her mental health and functioning is unsupported lay opinion and *post hoc* rationalization that may not be considered. (*Id.* at 3-5.)

Second, Plaintiff argues that the ALJ's errors in weighing the opinion evidence and making other findings are harmful and reversible. (*Id.* at 6.)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

III.  **ANALYSIS**

  A.  **Whether the ALJ's RFC Determination is Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 6-14 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 [2d Cir. 2008]). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 [2d Cir. 2013]). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196,

2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (Carter, M.J.) Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (Suddaby, C.J.) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 [2d Cir. 2013]). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. *See* 20 C.F.R. § 404.1527(c)(1)-(6). Additionally, when weighing opinions from sources who are not considered "medically acceptable sources"[2] under the regulations, the ALJ must consider the same factors as used for evaluating opinions from medically acceptable sources. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (Mordue, C.J.) (citing *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 [E.D.N.Y. 2010]); SSR 06-03p, 2006 WL 2329939.

As an initial matter, the Court notes that Plaintiff does not challenge a specific aspect of the ALJ's assessment of physical functioning. Plaintiff does argue that the ALJ's notation that the opinions of Elke Lorensen, M.D., and Roberto Rivera, M.D., were "not inconsistent with the [RFC]" suggests that the ALJ erroneously determined the RFC before considering the opinion

---

[2] Medically acceptable sources are noted to include the following: licensed physicians; licensed or certified psychologists; licensed optometrists; licensed podiatrists; and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).

-11-

evidence. (*Id.* at 27.) However, Plaintiff fails to argue, much less show, how any error in the ALJ's analysis prejudicially altered the RFC determination. Notably, review of the record shows that, on October 7, 2010, Dr. Rivera opined that Plaintiff had no limitations in sitting, standing and walking, mild limitations in lifting, and mild-to-moderate limitations in carrying, pushing, and pulling. (T. 590.) On May 14, 2015, Dr. Lorensen opined in an examination form that Plaintiff had no gross physical limitations but should avoid smoke, dust, and other respiratory irritants; in an appended check-box form, Dr. Lorensen elaborated that Plaintiff could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently, could sit and stand eight hours each in an eight hour workday, could walk four hours in an eight hour workday, was limited to frequent pushing, pulling, and overhead reaching, frequent use of foot controls, various postural limitations, and various environmental limitations (T. 818-23.) Neither of these opinions contradict the ALJ's finding that Plaintiff could perform light work with respiratory restrictions, and the ALJ's notation of normal findings on the exams conducted by Dr. Rivera and Dr. Lorensen indicate why the ALJ declined to adopt Dr. Lorensen's unsupported manipulative, postural, and other environmental limitations (which are also not supported by the record as a whole). The ALJ also afforded little weight to the opinion from Wendy Weis, NP, based on her status as a non-acceptable medical source and the inconsistency of her opinion with the record, including the opinions from Dr. Rivera and Dr. Lorensen. After carefully reviewing the record as a whole, the Court finds that the ALJ's physical RFC is supported by substantial evidence, including the opinions of Dr. Rivera and Dr. Lorensen.

As to Plaintiff's mental functioning, the record contains opinions from multiple sources. On September 30, 2011, Judy Cohen, LCSW, opined that Plaintiff was not qualified to work for

six months or longer, but she did not provide a functional assessment of Plaintiff's mental abilities. (T. 768.)

On November 19, 2011, examining physician William Kimball, Ph.D., opined that Plaintiff had marked limitations in her abilities to understand, remember, and carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with the public, supervisors and co-workers, respond appropriately to usual work situations and to changes in routine work setting, as well as moderate limitations in her abilities to understand, remember and carry out simple instructions and to make judgments on simple work-related decisions. (T. 775-76.) In his examination, Dr. Kimball observed that Plaintiff had a sad affect with little animation, mostly intact memory, and fair insight and judgment, although she performed poorly on a serial sevens test due to poor concentration; Dr. Kimball also noted that the results of her IQ testing appeared to be an underestimate of her true functioning due to her current depression symptoms. (T. 780.)

On May 23, 2013, examining physician Richard Oman, M.D., noted that Plaintiff reported having been off her medications for a month at the time of the examination and observed that Plaintiff was anxious, tearful and nervous, unable to perform serial sevens (though she could count from 20 to 1), recalled only one of three words, and displayed poor insight and judgment as evidenced by her decision to stop her medications. (T. 783-85.) Dr. Oman opined that Plaintiff was very limited[3] in her abilities to perform complex and low stress or simple tasks,

---

[3] This term is defined in the form as "[u]nable to function 75% or more of the time."

and moderately limited[4] in her abilities to maintain attention and concentration for rote tasks, regularly attend to a routine or maintain a schedule, and use public transportation. (T. 786.) Dr. Oman opined that Plaintiff was unable to participate in any activities other than treatment for six months, but that she would not be unable to work for more than six months. (T. 787.)

On October 10, 2013, treating therapist Michael Herzog, LCSW, indicated that Plaintiff had various symptoms of depression as required by Listing 12.04, marked deficits in concentration, ability to complete tasks in a timely manner, pace, and ability to assume increased mental demands associated with competitive work, and that she had displayed deterioration and inability to cope under stress. (T. 794-97.)

On May 14, 2015, Dennis Noia, Ph.D., observed that Plaintiff had normal posture and motor behavior, moderately adequate speech and language, was cooperative, relaxed, comfortable, recalled and understood instructions, had intact memory, attention, and concentration, and displayed borderline intellectual functioning. (T. 800-01, 807.) In his examination form, Dr. Noia opined that Plaintiff had no limitations in understanding and following simple instructions and directions, performing simple or complex tasks, attending a routine and maintaining a schedule, and making appropriate decisions, mild limitations in maintaining attention and concentration and her ability to learn new tasks, and mild to moderate limitations in her ability to deal with stress; he also opined that she was able to interact with others moderately well. (T. 803, 807.) In a separate check-box form, Dr. Noia opined that Plaintiff had a moderate limitation in her ability to respond to usual work situations and changes to a routine work setting, mild-to-moderate limitations in her abilities to carry out complex

---

[4] This term is defined in the form as "[u]nable to function 50% of the time."

instructions and make judgments on complex work-related decisions, and mild limitations in her ability to understand and remember complex instructions. (T. 810-11.)

On September 17, 2015, therapist Herzog submitted a letter in which he opined that Plaintiff was not a candidate for employment at that time. (T. 1113.)

Lastly, on January 15, 2016, Kim Richards, NPP, opined that Plaintiff had marked limitations in her abilities to carry out short, simple instructions, respond appropriately to work pressures in a usual work setting and respond to changes in a routine work setting, as well as moderate limitations in her abilities to understand and remember short, simple instructions, understand, remember, and carry out detailed instructions, make judgments on simple work-related decisions, and interact appropriately with the public and co-workers. (T. 1069-70.)

The ALJ weighed the above opinions as follows: (1) great weight to Dr. Noia's opinion because it was consistent with the results of his examination; (2) less weight to Dr. Oman's opinion because Dr. Oman examined Plaintiff only once (at a time when she was not taking any medications) and his opined limitations were inconsistent with statements Plaintiff made to her treatment providers about her activities and functioning; (3) less weight to Dr. Kimball's opinion because Dr. Kimball examined Plaintiff only once and his opined limitations conflict with Plaintiff's documented level of functioning and Dr. Kimball's own examination findings; (4) limited weight to Nurse Practitioner Richards' opinion because the opined marked limitations were not supported by the evidence, Plaintiff's own reports, the fact that Plaintiff did not allege a mental impairment in her initial application, and the fact that her therapy sessions were focused primarily on her relationship with her roommate and her efforts to obtain disability benefits; and (5) minimal weight to the opinions from therapists Cohen, Duffy, and Herzog because (a) they

are all non-acceptable medical sources, (b) therapist Cohen's opinion is an issue reserved to the Commissioner, (c) therapist Duffy's statement does not contain any opinion at all, and (d) therapist Herzog's opinions were vague given that they did not provide a specific opinion as to Plaintiff's continuous level of mental work-related functioning. (T. 27-29.)

The Court finds that the ALJ's assessment of these various opinions is supported by substantial evidence. Although Plaintiff picks apart the ALJ's reasoning by honing in on single reasons for discounting some of the above opinions, the ALJ has nonetheless provided other good reasons to support her findings, particularly inconsistency with the medical and other evidence that renders any such questionable reasons harmless to the validity of the ALJ's overall findings. *Greek*, 802 F.3d at 375. As the ALJ states, the evidence as a whole simply does not support the extensive limitations opined by some of these sources and the Court cannot say that the ALJ's finding is unsupported by substantial evidence given the fact that the treatment evidence is nearly devoid of any significant mental objective findings, particularly when Plaintiff was taking her prescribed medications.

The Court also notes that affording less or limited weight to these other opinions does not mean that the ALJ rejected them wholesale and relied solely on Dr. Noia's opinion. Rather, the ALJ adopted greater social limitations than those evident from Dr. Noia's opinion when concluding that Plaintiff was limited to performance of tasks that do not require working in tandem or conjunction with others and that predominantly involve working with objects rather than people. (T. 24.) In particular, this seems to incorporate nurse practitioner Richards' opinion that Plaintiff is moderately limited in her ability to interact appropriately with the public and co-workers. It is therefore not wholly correct of Plaintiff to argue that the ALJ relied only on Dr.

Noia's opinion, merely that the ALJ appropriately declined to rely on portions of the relevant opinions that suggested limitations greater than those indicated by the evidence in the record as a whole.

For the above reasons, the Court finds that the ALJ's RFC determination is supported by substantial evidence. Remand is not warranted on this basis.

        **B.**        **Whether the ALJ's Listing Finding is Supported by Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative. Plaintiff's argument on this point is entirely based on her assertion that the ALJ erred in failing to adopt the greater limitations opined by the various examining and non-acceptable medical sources. (Dkt. No. 14, at 28-29 [Pl.'s Mem. of Law].) Because the Court has already found that the ALJ's weighing of the opinion evidence is supported by substantial evidence, this related argument therefore must also fail.

Additionally, although neither party raised the issue, the fact that the ALJ did not expressly indicate that she considered Listings 12.04, 12.05, or 12.06 related to Plaintiff's relevant mental impairments does not constitute reversible error. Rather, a court may uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence. *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (Mordue, C.J.) (citing *Berry v. Schweiker*, 675 F.2d 464, 468 [2d Cir. 1982]). It is clear from the ALJ's analysis using the psychiatric review technique and the rest of her discussion of the mental health evidence that the ALJ's finding that Plaintiff did not meet any mental Listing is supported by substantial evidence. Consequently, remand is not warranted on this basis.

### C. Whether the ALJ's Credibility Finding Is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 14-17 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (Suddaby, J., Bianchini, M.J.) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 [N.D.N.Y. 1999] [Kahn, J., Smith, M.J.]). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]; *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 [2d Cir. 1984]). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference. *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (Kahn, J., Bianchini, M.J.) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 [2d Cir. 1999]).

Here, the ALJ provided a number of reasons for finding that Plaintiff's allegations were not wholly credible, including that her primary mental stressors appeared to be money and her roommate, and the inconsistency of her reports of symptoms with the medical evidence and other evidence of record, including her reports of activities of daily living found in her therapy notes. (T. 27-28.) After reviewing the evidence, the Court finds that these reasons are sufficient to establish that the ALJ's credibility finding was supported by substantial evidence. Remand is therefore not warranted on this basis.

### D.      Whether the ALJ's Step Five Finding Is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 23-24 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 [2d Cir. 2012]). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [] and [the hypothetical] accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre*, 758 F.3d at 151 (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 [2d Cir. 1983]; citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 [2d Cir. 1981]).

As discussed above in Part III.A of this Decision and Order, the ALJ's RFC finding is supported by substantial evidence. Because the ALJ based the hypothetical question posed to the

vocational expert on the limitations in the RFC, that hypothetical question reflected all the supported limitations on Plaintiff's ability to work.  Consequently, the vocational expert's testimony in response to that hypothetical question as to the other work Plaintiff remained able to perform in the national economy constitutes substantial evidence to support the ALJ's Step Five finding.  Remand is not warranted on this basis.

      **ACCORDINGLY**, it is

      **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

      **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

      **ORDERED** that the Commissioner's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: January 2, 2019
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge